repute, must show it; the law will not help him out with presumptions.

We are not prepared to say that it was error to admit the evidence of Dr. Buck, referred to in the eighth assignment. It is true the medical examination was made at a very late day, and, to the extent of the delay, the force of the evidence was very much weakened. The learned judge very properly called the attention of the jury to this circumstance, in his charge.

Nor do we think there was error in the exclusion of the testimony referred to in the eleventh assignment. At the time the defendant took the child to Dr. Meine for the purpose of having a medical examination, she was under his control, living in his house. In taking her alone to a physican of his own selection, he may have been attempting to manufacture testimony for himself. The offer was also vague. It was not stated who had interposed the objection to the medical examination. The offer amounts to nothing more than that the doctor had refused to make an examination.

There is nothing in the remaining assignments which we think requires notice. The subject, as before observed, is unsavory; and we gladly end the discussion.

> The judgment is affirmed, and it is ordered that the defendant surrender himself forthwith to the custody of the sheriff of Potter county, under and in obedience to the sentence of the court below.

---

## B. D. HAMLIN ET AL. v. N. J. PECK ET AL.

135    493
21 SC    74

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF POTTER COUNTY.

Argued May 9, 1890—Decided June 2, 1890.

After an order has been made by the majority of the Court of Common Pleas, present the law judge and the two associates, determining an appeal, under the act of April 19, 1889, P. L. 37, from a valuation of taxable property by the county commissioners, it is error to award an in-

Opinion of Court below.

junction upon a bill in equity, filed by a party to the appeal, to restrain the collection of taxes upon the valuation as adjusted by said order, but averring no ground for equitable jurisdiction.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 399 January Term 1890, Sup. Ct.; court below, No. 243 March Term 1890, C. P.

On February 8, 1890, B. D. Hamlin, Henry Hamlin and John Forest filed a bill in equity against N. J. Peck, treasurer, and C. H. Cole, W. G. Wilber and B. McGinnis, commissioners, of the county of Potter.

Upon the hearing of a motion for a preliminary injunction, before TAYLOR, P. J. 28th district, specially presiding, there were presented a number of affidavits, and also the record of a certain appeal to the Court of Common Pleas, authorized by the act of April 19, 1889, P. L. 37, from the assessment and valuation of certain tracts of unseated land of the complainants, made by the defendants under the triennial assessment of 1888. Subsequently the following opinion was filed:

The record shows an appeal by the plaintiffs, filed April 29, 1889, from certain assessments by the county commissioners; August 5, 1889, decree thereon filed by Hon. T. A. Morrison, additional law judge; same day, decree of H. T. Reynolds and C. Stearns, associate judges, filed; December 27, 1889, Commissioners' bill of costs filed, amounting to $312.60; fieri facias to No. 33 March Term 1890.

The bill charges that the plaintiffs are the owners of certain tracts of unseated lands situate in said county; that, at the triennial assessment of 1888, the commissioners gave to the several assessors private printed instructions, wherein they were directed, first, "to make returns of all property at its actual cash value;" second, to assess all real estate at one fifth of its cash value, and all personal property at one fourth its actual cash value; that in pursuance of these instructions, the assessors returned the lands on the basis of one fifth their actual value; that upon the returns made, the commissioners raised the assessment and valuation of the plaintiffs' lands largely out of proportion with the assessment and valuation of other property in the

county, leaving the seated lands as returned by the assessors, as appears by schedule attached, etc.; that plaintiffs gave evidence before the commissioners that the seated lands were assessed at less than one fifth, and the plaintiff's lands much higher than one fifth their actual cash value, but that the commissioners, without any evidence to contradict that of the plaintiffs, refused to change said rates, whereupon an appeal was taken, and, at the hearing of said appeal, Hon. Thomas A. Morrison, additional law judge, presided, and Hon. H. T. Reynolds and Consider Stearns were sitting as associates; that the presiding judge took full and careful notes of the testimony, and, on August 5, 1889, in open court, filed as the opinion of the court an opinion and decree.

The examination of, and the assessment and valuation fixed by the presiding judge covers eighty-five parcels of land belonging to the plaintiffs in the different appeals. This revision has been very carefully done; the number of the warrants, of acres, and the valuation per acre, is individualized, as it should be in disposing of the appeal. The decree disposes of the costs and is signed, " Per Curiam, T. A. Morrison."

About the same time that the opinion and decree above stated were filed, the associates had filed a paper which was, in effect, a dismissal of the appeals, and affirming the assessment and valuation as fixed by the commissioners; signed, " H. T. REYNOLDS, C. S. STEARNS. Associate Judges." As the record does not show any additional opinion of the associate judges filed, I must decline to notice it.

The bill avers further: That the commissioners have caused execution to be issued for costs, and have caused to be entered in the treasurer's duplicate the levy of the taxes aforesaid upon the valuation fixed by them prior to the appeal; that the plaintiffs have paid the full amount of the taxes for the year 1889, as fixed by the court in the decree which is in proper form, but that the treasurer has refused to accept the same in full, and is threatening to advertise and sell the plaintiffs' lands for the excess. The prayer is:

1. For an injunction restraining the treasurer and the commissioners from advertising or collecting the alleged unpaid taxes.

2. That the county commissioners be restrained from collecting the cost of the appeal as ordered by the associate judges.

3. That the commissioners be required to reform the assessments in accordance with the assessment and valuation made by the court in the decree of said court and signed by the presiding judge.

4. Further relief.

It is conceded by the plaintiffs that the decree of the Court of Common Pleas, in proper form upon the points of the controversy, is final and not the subject of review.

Upon the record but two questions arise which I will examine : 1. Are these appeals disposed of ? 2. If so, by whom ?

If the action of the associates was, in effect, simply dismissing the appeals, and it requires at least one of the associates to concur with the presiding judge, the appeals are still pending, and the injunction prayed for should issue for that reason. The action of the associates, as shown by the record, is as follows, to wit :

"And now, August 5, 1889, it is hereby ordered and decreed that the assessment of taxes appealed from in this case be affirmed, and that the lands mentioned in said appeal be and remain assessed at the amounts or valuations they were severally assessed at (as revised by the county commissioners) at the time the appeal in this case was taken, as shown by the appeal filed in the case, and the records in the county commissioners' office ; all costs of this appeal to be paid by the appellants."

In my opinion, if this disposition of appeals on eighty-five different tracts of land has any virtue, it is dispatch. It is simply an affirmance of the judgment of the commissioners, and a dismissal of the appeals wholesale. Not a single change is made, nor reason given for this attempted blotting out in one fell sweep of the alleged rights of the appellants. Their duty was prescribed by the act of April 19, 1889, P. L. 37, which declares : "They shall hear the said appeals and proofs in the case, and make such orders and decrees touching the matter complained of as to the judges of said court may seem just and equitable, having due regard to the valuation and assessment made of other real estate in such county or city." The legislature evidently contemplated some action upon the part of the judges. They were not simply to affirm the judgment of other parties, and thus render the appeals nugatory.

This action of the associates is so irregular that it ought to be set aside.

We have left, then, the opinion of the court, and the decree in legal form by the presiding judge. He is the legal head of the court, and has not only his integrity but his professional reputation constantly before him, as a warning to himself and a pledge to the people that his decisions are unbiased. As was said by Justice WOODWARD in Glamorgan Iron Co. v. Snyder, 84 Pa. 397 : " The purely legal business of a court of original jurisdiction must be left to the control of a single judge, if efficiency, promptitude and official responsibility are worth mentioning. If the deliberately formed purpose of a president judge may be thwarted and overturned by action on the part of his associates, which must necessarily be ill-considered and very often be prejudiced, rules of law will be subordinated to individual caprice." Was not the examination and disposition of these appeals as much a trial of matters of fact, under the rules of law, as if a jury had been empaneled to try the facts? The presiding judge took notes of testimony, passed upon its competency and relevancy, admitted or rejected it, answered points of counsel, which were filed, filed the opinion of the court, as was his duty, and made a decree in proper legal form.

The counsel have, with commendable industry, examined and cited many authorities upon the question of the power of the associate judges to overrule the president judge, but none bearing directly upon the state of facts existing in this case, under consideration, in the Court of Common Pleas. Under the view I have taken of the proper construction of the record, it is unnecessary to express an opinion upon the power or want of power of the associates to overrule the president judge, or the constitutionality of the act of April 19, 1889.

Every official act of the county commissioners, and every other public officer, should be so open as to challenge the scrutiny of the public ; and, in the light of the secret instructions and the subsequent action of the commissioners thereon, the owners of unseated lands might well feel aggrieved; yet, if the record was fair, and no fraud, they would be without remedy.

For the reasons given, a preliminary injunction is awarded,

to issue upon the plaintiffs giving bond in the sum of $1,000, as conditioned by law; the bond to be approved by Hon. A. G. Olmsted, President Judge.

—Thereupon the defendants took this appeal, assigning the decree granting the preliminary injunction for error.

*Mr. H. C. Dorman and Mr. Robert Allen* (with them *Mr. Isaac Benson, Mr. Eugene Mullin and Mr. Reading*), for the appellants.

That in such appeals under the act of 1889, the question of valuation was left to the sound discretion of the Court of Common Pleas, and the decree of a majority of the court was conclusive, could not be attacked collaterally, in the absence of frauds, etc., and could be reviewed even in the Supreme Court only on certiorari, counsel cited: Kimber v. Schuylkill Co., 20 Pa. 366; Silver v. Schuylkill Co., 20 Pa. 369; Hughes v. Kline, 30 Pa. 227; § 7, act of April 26, 1850, P. L. 627; Clinton Sch. D.'s App., 56 Pa. 315; Stewart v. Maple, 70 Pa. 221; Commonwealth v. Plankroad Co., 35 Pa. 152; Patterson v. Lane, 35 Pa. 275. As to the power of the associate judges, as a majority of the court: Article V., § 4, constitution of 1790; Buckalew on the Constitution, 127, 128; Article V., § 3, constitution of 1838; §§ 19, 20, act of April 14, 1834, P. L. 344; Article V., § 4, constitution of 1874; Commonwealth v. Addison, 4 Dall. *225; Addison's Trial (Lloyd), 69, 70; Leib v. Commonwealth, 9 W. 200; Commonwealth v. Dumbauld, 97 Pa. 295; Glamorgan Iron Co. v. Snyder, 84 Pa. 397; Reiber v. Boos, 110 Pa. 594; Kolb's Case, 4 W. 154; Commonwealth v. Kryder, 1 Penny. 143; Leister's App., 20 W. N. 224; Richardson v. Stewart, 2 S. & R. 84; O'Mara v. Commonwealth, 75 Pa. 424, 432; Smith v. Commonwealth, 54 Pa. 210; Lewistown Road, 84 Pa. 410.

*Mr. Mortimer F. Elliott* (with him *Mr. W. I. Lewis, Mr. A. B. Mann and Mr. John Omerod*), for the appellees.

As to the powers and duties of the associate judges, counsel cited: Glamorgan Iron Co. v. Snyder, 84 Pa. 397; Syracuse Oil Co. v. Carothers, 63 Pa. 380; Kolb's Case, 4 W. 154; § 25, act of February 24, 1806, 4 Sm. L. 276; § 1, act of April 15, 1856, P. L. 337; § 20, act of April 14, 1834, P. L. 344; § 2, act of June 15, 1887, P. L. 407.

PER CURIAM:

The decree is reversed, at the costs of the appellees, and the injunction dissolved.

———————— ✦ ————————

## J. A. BURGER v. H. BURGER ET. AL.

APPEAL BY J. W. B. BAUSMAN FROM THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 19, 1890—Decided June 2, 1890.
[To be reported.]

1. When money is deposited in a bank to the credit of "A, attorney for B," neither the bank nor A can be heard to deny that the money belongs to B; but if, in point of fact, the money belongs to a third person, the latter, on giving notice of his claim to A and the bank, can recover it if he succeed in establishing his right.

(*a*) A debtor agreed by parol with certain of his creditors, in consideration of their giving him time to consider whether he would accept a proposed composition or make a general assignment, to deposit a sum of money with his attorney, to be paid to his creditors if a compromise should be made, or to his assignee, if he should make an assignment:

2. The money not having been specifically and irrevocably appropriated, by this arrangement, to any particular creditor or creditors, it remained in the hands of the attorney the property of the debtor, and was liable to attachment as such, although the creditors joining in the arrangement had complied with their agreement to give the debtor time.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MC-COLLUM JJ.

No. 352 January Term 1889, Sup. Ct.; court below, No. 5 March Term 1888, C. P.

On February 14, 1888, a judgment was entered by confession in favor of John Adam Burger against Henry Burger for $4,500, and the same day an attachment-execution was issued thereon, and was served upon J. W. B. Bausman as garnishee.

On March 27, 1888, in response to interrogatories filed by the plaintiff, the garnishee answered, stating the facts as follows:

" At a meeting of the creditors of Henry Burger, at which he